No. 22-35447

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

MARK JONES and MICHAEL MCKEE,
PLAINTIFFS — APPELLEES,

v.

FORD MOTOR COMPANY,
DEFENDANT — APPELLANT.

Appeal from the United States District Court for the
Western District of Washington; No. 3:21-cv-05666-DGE

**APPELLANTS' OPENING BRIEF**

ARD LAW GROUP PLLC

Joel Ard
joel@ard.law
P.O. Box 11633
Bainbridge Island, Washington 98110
(206) 701-9243

THE RESTIS LAW FIRM P.C.

William R. Restis
william@restislaw.com
402 West Broadway, Suite 1520
San Diego, CA 92101
(619) 270-8383

October 7, 2022

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ...................................................... 1

STATEMENT OF ISSUES ............................................................ 1

STATEMENT OF THE CASE ......................................................... 2

PROCEDURAL HISTORY ............................................................ 4

ARGUMENT ...................................................................... 4

I.   Ford Did Not And Cannot Carry Its Burden To Show Jurisdiction,
     Compelling Vacatur And Remand. ........................................... 7

     A. Ford's Burden To Show Art. III Jurisdiction. ................................ 8

     B. Ford Cannot Carry Its Jurisdictional Burden While Arguing The
        Complaint Alleges Neither Harm Nor Causation......................... 11

     C. Ford Attempted To Shift Its Jurisdictional Burden By Citing
        Plaintiffs' Response To Ford's Motion. .................................. 14

     D. Ford's Success Below Judicially Estops It From Arguing
        Allegations Of Injury Or Causation To This Court. ..................... 17

II.  Plaintiffs' Complaint Alleges Facts Sufficient To Show A Meritorious
     WPA Claim. ............................................................. 18

     A. The Complaint Alleges Specific, Detailed, Knowing, Voluntary
        Actions By Ford That Resulted In Interception And Copying. .... 19

        1. Extensive Fact Allegations Show Ford's Conduct Caused
           The WPA Violation........................................... 20

        2. Intervening Acts Do Not Change Proximate Cause. .......... 21

        3. Dicta From *State v. Bilgi* Means The Complaint Alleged
           Ford, Not The Infotainment System, Is Liable. ................. 23

     B. The Complaint Alleges Injury To Plaintiffs' Persons.................. 29

        1. The Statute's Text And History Show That The Violation
           Alone Constitutes Actionable Injury. ................................ 29

        2. The Acts Alleged Constitute Actionable Common Law
           Invasion Of Privacy, Specifically, Intrusion On Seclusion.. 34

        3. No Subsequent Access Or Disclosure Is Required. ............ 36

4. This Court's Decision in *Patel* Shows That Statutory Privacy Laws Incorporate The Common Law Standard Of Violation Equaling Actionable Injury. ................................ 37

CONCLUSION. ........................................................................ 39

# TABLE OF AUTHORITIES

## CASES

*Armijo v. Yakima HMA, LLC*, 2012 WL 2576624 (E.D. Wash. July 3, 2012) ................................................................................ 37

*Ayala v. Sixt Rent a Car, LLC*, 2019 WL 2914063 (C.D. Cal. July 8, 2019) .................................................................................13

*Clark v. S&J Advertising, Inc.,* 611 B.R. 669 (E.D. Cal. 2019) ................................17

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009 (2020) ................................................................................ 21

*Corcoran v. Southwestern Bell Tel. Co.*, 572 S.W.2d 212 (Mo. App. 1978) ................................................................................ 36

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017)........................................ 36

*Ernest & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195 (9th Cir. 2022)................................................................................ 5

*Fairfield v. American Photocopy Equip. Co.*, 138 Cal. App. 2d 82 (1955).................. 32

*Fowler v. Southern Bell Tel. & Tel. Co.*, 343 F.2d 150 (5 Cir. 1965) .......................... 35

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990)................................................ 14

*Guerrero v. Gates*, 442 F.3d 697 (9th Cir. 2006) ...................................................... 6

*Hamberger v. Eastman*, 106 N.H. 107 (1964) .......................................................... 36

*Hansen v. Grp. Health Coop.*, 902 F.3d 1051 (9th Cir. 2018).................................... 8

*Hunter v. Philip Morris USA*, 582 F.3d 1039 (9th Cir. 2009) .................................. 12

*Kearney v. Kearney*, 95 Wash. App. 405 (1999)........................................................ 37

*Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994) .................. 4, 5, 8

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) .................................................... 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)..........................................passim

*Matter of Hopper*, 4 Wash. App. 2d 838 (2018)........................................................ 26

*McCoy v. Am. Suzuki Motor Corp.*, 136 Wash. 2d 350 (1998) .................................. 23

*McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178 (1936) ............... 16

*Morgan v. Bank of Am., N.A.*, 2020 WL 3979660 (E.D. Wash. July 14, 2020) .................................................................................13

*Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821 (9th Cir. 1974) ........................................................................ 32

*Pacheco v. United States*, 515 P.3d 510 (Wash. 2022) ............................................ 22

*Patel v. Facebook*, 932 F.3d 1264 (2019) ......................................................37, 38, 39

*Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193 (9th Cir. 2016) ................................ 12

*Reid v. Pierce Cnty.*, 136 Wash. 2d 195 (1998) ................................................... 29, 38

*Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197 (Ill. Sup. Ct. 2019) ..................................................................................... 38

*Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wash. 2d 468 (1998).................................. 23

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007) ...................................................................................15

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ........................................................ 8

*State v. Bilgi*, 19 Wash. App. 2d 845 (2021)..................................... 23, 24, 25

*State v. Christensen*, 153 Wash. 2d 186 (2004) ...................................... 22

*State v. Faford*, 128 Wash. 2d 476 (1996)......................................... 18, 28

*State v. Glant*, 13 Wash. App. 2d 356 (2020)........................................... 26

*State v. Goucher*, 124 Wash. 2d 778 (1994) ......................................... 19

*State v. Gunwall*, 106 Wash. 2d 54 (1986) ......................................... 19

*State v. Hinton*, 179 Wash. 2d 862 (2014)........................................ 18, 29

*State v. Kipp*, 179 Wash. 2d 718 (2014) ............................................. 21

*State v. O'Neill*, 103 Wash. 2d 853 (1985) ......................................18, 30

*State v. Pouncy*, 20 Wash. App. 2d 1019 (2021) ...................................... 26

*State v. Racus*, 7 Wash. App. 2d 287 (2019).......................................... 27

*State v. Roden*, 179 Wash. 2d 893 (2014) .......................................19, 27

*State v. Smith*, 189 Wash. 2d 655 (2017)............................................... 30

*State v. Townsend*, 147 Wash. 2d 666 (2002) ..................................... 26, 27

*Terrell v. Costco Wholesale Corp.*, 2017 WL 2169805 (W.D. Wash. May 16, 2017) ...................................................................................13

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ...........................5, 11

*Turner v. Bank of N. Am.*, 4 U.S. 8 (1799) ......................................15

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749 (1989) ......................................................................................36

## Statutes

28 U.S.C. § 1332 ........................................................................... 4

Laws of 1961 c 216 § 9 ..................................................................31

Laws of 1967 c 93 ....................................................................... 30

Laws of 1977 c 363 § 1 ................................................................. 37

Laws of 1977 c 363 § 2 ................................................................. 33

RCW 19.86.090 ...........................................................................31

RCW 9.73.010 ............................................................................ 29

RCW 9.73.030 .......................................................................passim

RCW 9.73.060 ............................................................................ 33

RCW 9.73.260 ...................................................................... 22, 23

## Court Rules

Fed. R. Civ. P. 12(b)(1) ...................................................... 8, 9, 13, 14

Fed. R. Civ. P. 12(b)(6) ..........................................................passim

Wash. Super. Ct. Civ. R. 12(b)(6) ............................................... 16

## Other Authorities

1977 Final Legislative Report ........................................................ 34

Restatement (Second) of Torts § 652 .......................................... 29, 35

## Jurisdictional Statement

Washington State's Thurston County Superior Court had jurisdiction over this matter pursuant to RCW 2.08.010. Defendant Ford Motor Company, Inc. ("Ford") removed the matter to the United States District Court for the Western District of Washington at Tacoma, asserting federal jurisdiction under 28 U.S.C. § 1332(d). This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

The district court's final judgment disposed of all parties' claims and was entered on May 20, 2022. ER 10. The Plaintiffs timely filed a notice of appeal on June 8, 2022. ER 3-4; *see also* Fed. R. App. P. 4(a)(1)(A).

As detailed below, the District Court's decision dismissing the operative Complaint adopted Ford's argument that Plaintiffs Mark Jones and Michael McKee ("Plaintiffs") failed to plead two of the three elements of Article III standing, without addressing Plaintiffs' argument that Ford's argument barred dismissal, but instead compelled remand. Because Ford bears the burden of overcoming the presumption against the existence of federal jurisdiction, but has affirmatively disclaimed that the Complaint alleges facts sufficient to show two of three elements of Plaintiffs' standing, the District Court and this Court lack jurisdiction under Art. III for any purpose other than to remand to Thurston County, retaining federal jurisdiction only for a fees motion under 28 U.S.C. § 1447(c).

## Statement Of Issues

1. Whether the court has Article III jurisdiction;

2. Whether Plaintiffs alleged acts *by Ford* that caused the alleged violation of the Washington Privacy Act;

3. Whether Plaintiffs alleged that Ford's acts resulted in an injury to the person actionable under the Washington Privacy Act.

## Statement of the Case

Plaintiffs allege that Ford violated the Washington Privacy Act, Chapter 9.73 RCW ("WPA"). Pursuant to the WPA, it is "unlawful for any corporation to intercept, or record any private communication between two or more individuals by any device electronic designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication." RCW 9.73.030 (cleaned up). As detailed below, Plaintiffs allege that Ford designed, manufactured, and sells vehicles, including to Jones, which Ford elects to equip with infotainment systems. Ford intentionally designed those systems to copy messages from connected phones. Whenever a smartphone is connected to the infotainment system, the system automatically copies, downloads, and retains, in on-board vehicle memory, every text message stored on the phone, together with all call logs (records of every call made from or received by the phone). And while the phone is connected, the infotainment system continues to copy all texts sent or received, as well as all call logs generated during connected use. These secret copies are not disclosed to any user who connects his phone, much less to his counterpart to the private communications. These functions are not needed to allow hands-free use of a connected phone or in order for any driver to comply with "hands free" laws. *Cf.* RCW 46.61.672. As a result, Ford intercepts and records all private communications of anyone in Washington who connects a smartphone to a Ford vehicle, and retains

them on the vehicle, all without disclosure to parties to the communications. In short, Plaintiffs alleged that when a smartphone is plugged into a Ford vehicle, Ford conducts an automatic scraping and download of nearly every electronic record on that phone, including text messages and call logs, into permanent, undeletable vehicle memory, inaccessible to Plaintiffs or any individual whose private, protected communications are copied.

Plaintiffs, on their own behalf and on behalf of a putative class, sought declaratory and injunctive relief as well as statutory damages of $1,000 per class member as provided by RCW 9.73.060. Plaintiffs did not seek damages for disclosure or other secondary effect of Ford's actions.

Ford moved to dismiss. It argued that the Complaint alleged that the *vehicle*, not Ford, intercepted and recorded messages and call logs; that the Complaint failed to allege an injury to Plaintiffs; that Plaintiffs had consented to any recording; and that the Complaint did not allege "interception." Over Plaintiffs' Opposition, the District Court dismissed the Complaint. It agreed that the Complaint failed to allege any act by Ford: "Plaintiffs do not allege the infotainment systems are acting with agency when they download or record a copy of the texts and call logs." ER 19. As such, the District Court held that "the FAC fails to assert sufficient facts to establish Ford is engaging or has engaged in a WPA violation." ER 19. It also held that the acts described in the Complaint had not harmed Plaintiffs, but only alleged "a potential injury that may or may not occur at some unknown point in the future." ER 20. It did not address Plaintiffs' argument that Ford's position compelled remand, not dismissal. ER 33-34.

3

## Procedural History.

On August 9, 2021, Plaintiffs filed suit against Ford, one of five related cases against vehicle manufacturers.[1] Ford removed the case on September 10, 2021, 4-11, and moved to dismiss on October 8. Plaintiffs amended the Complaint on November 4, 2021, ER 41-62, but explicitly alleged that "[t]he Thurston County Superior Court has jurisdiction over the subject matter of this lawsuit and over the parties to the lawsuit. [¶] Venue is proper in the Thurston County Superior Court pursuant to RCW 4.12.025 because Defendant resides in Thurston County." ER 36. Defendants again moved to dismiss on November 18. ER 8. The Court granted that Motion on May 5, 2022, ER 13-25, and dismissed the operative First Amended Complaint (hereafter, "Complaint") on May 20, ER 11-12. This appeal timely followed on June 8. ER 3-4.

## Argument

This Court must vacate the decision below with instructions to remand the case to Thurston County Superior Court. Two long-standing constitutional requirements compel this result: First, the defendant who removes a case from state court assumes the obligation of rebutting the Constitutional presumption against federal jurisdiction. The defendant must affirmatively demonstrate both statutory (here, 28 U.S.C. § 1332) and Art. III jurisdiction. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Second, the irreducible constitutional

---

[1] All five cases are now pending before this Court: *Jones v. Ford*, No. 22-35447; *Ritch v. Honda*, No. 22-35448; *Dornay v. VW*, No. 22-35451; *Goussev v. Toyota*, No. 22-35454; and *McKee v. GM*, No. 22-35456.

4

minimum of standing is a pleading that alleges injury, causation by the defendant, and judicial redressability. *See, e.g.*, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Ford, not Plaintiffs, must always allege and prove, with increasing burdens as the case progresses, *see, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), that the Complaint alleges a constitutionally sufficient injury to Plaintiffs, caused by Ford. "If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *TransUnion*, 141 S. Ct. at 2203. Because "it is to be presumed that a cause lies outside this limited jurisdiction," *Kokkonen*, 511 U.S. at 377, Ford cannot satisfy its burden *either* by its silence *or* by pointing to Plaintiffs' defense of the merits of the Complaint, a defense filed in response to a motion to dismiss which Ford presented to a forum that Plaintiffs did not seek.

Instead, the Constitutional presumption against federal jurisdiction, the burden on a removing defendant to overcome it, and the irreducible minimum requirements of injury and causation mean that Ford has self-rebutted the assertion of Art. III jurisdiction implied by its Notice of Removal. Ford's Motion now stands as an unrebuttable admission: Ford contends this matter ***does not*** present a case or controversy, justiciable under the federal Constitution. Ford has not, and can never, meet its burden to demonstrate federal jurisdiction.

The Court below erred in reaching the merits, and subsequently erred in its treatment of the merits. "It is axiomatic that a motion to dismiss is viewed with disfavor and is rarely granted." *Ernest & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) (cleaned up). In granting Ford's disfavored motion, the

Court did not "take as true all allegations of material fact and *construe them in the light most favorable to the nonmoving party.*" *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006) (emphasis added). It misread the Complaint to find that the Complaint alleged action by a device, not Ford. It misapplied dicta from a readily distinguishable case to read into the WPA an unmet requirement for "agency," found in no other WPA cases. It ignored extensive allegations (which must be accepted as true) showing that Ford's direct, purposeful actions cause the harms of which Plaintiffs complain. The Court found that Plaintiffs alleged no harm, disregarding and discounting fact allegations showing that Ford's actions constituted—at least—the common law personal tort of invasion of privacy. With no support in statutory text or history, it found that the WPA requires additional injury, beyond that common law tort. It discounted to nothing the present and ongoing chilling effect of Ford's actions which deprive Plaintiffs of the ability to engage in private text communications.

But Ford and the court below cannot have it both ways. Either there is no Article III case or controversy, and the merits are left to the Thurston County Superior Court. Or there *is* Article III jurisdiction, and the same facts that provide federal jurisdiction also demonstrate that Ford's motion to dismiss was wrongly granted. Since Ford has foreclosed its ability to meet its jurisdictional burden, remand is the required outcome. The Thurston County Superior Court will not hesitate to reject Ford's arguments, which lack merit under the WPA.

# I.   FORD DID NOT AND CANNOT CARRY ITS BURDEN TO SHOW JURISDICTION, COMPELLING VACATUR AND REMAND.

After removal, Ford promptly sought dismissal on the grounds that, *i.a.*, the Complaint did not allege any injury to Plaintiffs, and failed to allege that Ford had caused any alleged injury. In fact, according to Ford, the Complaint did not allege that Ford had acted at all. Because injury and causation are two of the three constitutionally irreducible minimum requirements of Art. III standing, Ford's Motion cannot be squared with its permanent, unshifting burden to show the existence of federal jurisdiction that it elected to invoke.

In the Court below, Ford argued that remand was improper because "Plaintiffs have not sought to remand this case to state court, nor do they assert in their Opposition that they lack Article III standing. Neither party, accordingly, has questioned Plaintiffs' Article III standing at this time, based on the allegations in the Complaint." ER 30 (Reply at 5 fn 4). Of course Plaintiffs *did* argue for remand in opposing the Ford's motion to dismiss. ER 33-34. Regardless, this argument ignores the fundamental, long-standing obligation that the Constitution imposes on the party invoking federal jurisdiction to affirmatively demonstrate jurisdiction. Ford ***must*** overcome the strong presumption against federal jurisdiction, including removal jurisdiction. Ford attempted to create an impermissible, burden-shifting Catch-22: ***first*** remove, ***then*** move to dismiss on the putative absence of allegations that specifically track elements of Art. III jurisdiction (without explicitly invoking Art. III). Then, Ford can ***finally*** procure a judgement on the merits from an Art. III court after effectively denying the existence of federal jurisdiction, all because Plaintiffs

defended the allegations of the Complaint. No federal court has ever concurred that a removing defendant may abandon its burden to demonstrate jurisdiction, or shift that affirmative burden to a plaintiff, simply by filing a FED. R. CIV. P. 12(b)(6) motion. Quite the contrary: This Court has explicitly held that the standards for remand, FED. R. CIV. P. 12(b)(1), and FED. R. CIV. P. 12(b)(6) are identical—except that a removing *defendant*, not the plaintiff, must carry the burden of persuasion as to the facts alleging Art. III jurisdiction.

### A. Ford's Burden To Show Art. III Jurisdiction.

Ford must confirm the Article III jurisdiction of the district court and this Court—the Constitution and Supreme Court mandate it. To do so, *Ford* must satisfy the Court that Plaintiffs have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

This is Ford's burden, because it elected to remove from Thurston County. And that burden is not minor. "The *removing defendant* bears the burden of overcoming the *strong presumption against removal jurisdiction*." *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018) (cleaned up, emphasis added). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. *It is to be presumed that a cause lies outside this limited jurisdiction*, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (emphasis added). The burden to demonstrate jurisdiction in this case, now and always, rests with Ford, the party who invoked Art. III

jurisdiction by removal. Thus, Ford, not Plaintiffs, must satisfy the Court that the Complaint satisfies all elements of standing. Relevant here, in light of Ford's pleadings and the decision below, Ford must show an injury to Plaintiffs that Ford caused. Ford's burden remains as long as the case remains in federal court.

Ford failed to carry this burden in the court below, for two reasons. And, as to both points, its pleadings below estop it from attempting to do so here. On the merits, Ford repeatedly argued that the Complaint (a) does ***not*** allege any harm at all to Plaintiffs, and (b) failed to allege causation by Ford of any alleged harm. But Ford could not make those arguments after electing to remove, and taking on the affirmative burden of demonstrating Art. III standing. Instead of shouldering its burden, Ford argued that it need not make any affirmative showing simply because Plaintiffs would not concede that the Complaint was deficient in either respect. Ford then attempted to slough its burden off on Plaintiffs. It argued that it could impliedly assert the Complaint alleged injury and causation by removing, then contest the existence of those same fact allegations of injury and causation by moving to dismiss, and finally procure a federal courts dismissal by stealing Plaintiffs' defense of the Complaint as sufficient to satisfy Ford's burden. This two-step has been decisively rejected by this Court, as explicitly contrary to the long-established burden on a removing to demonstrate jurisdiction.

This Court has long held that jurisdictional remand standards are the same as FED. R. CIV. P. 12(b)(1) standards, which in turn adopt the standards as to facts and law applied in FED. R. CIV. P. 12(b)(6) motions. But removal reverses the roles, because by electing to remove Ford assumed the burden of showing

jurisdiction. This Court's decision in *Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) merits being quoted at length:

> Under Rule 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways. A facial attack accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction. The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction.
>
> *  *  *
>
> Challenges to the existence of removal jurisdiction should be resolved within this same framework, given the parallel nature of the inquiry. . . As under Rule 12(b)(1), a plaintiff's motion to remand may raise either a facial attack or a factual attack on the defendant's jurisdictional allegations, triggering application of the rules discussed above for resolving such challenges.

*Leite*, 749 F.3d at 1121-22 (cleaned up). When Ford moved to dismiss, arguing that the Complaint failed to allege injury or causation, Plaintiffs immediately asserted to the Court below that Ford's position compelled remand for failure to show Art. III jurisdiction. ER 33-34. The decision below made no comment on district court's constitutional limitations, much less the "irreducible constitutional minimum of standing," *Lujan*, 504 U.S. at 560, despite concurring with Ford that the complaint failed to allege injury or causation.

**B.     Ford Cannot Carry Its Jurisdictional Burden While Arguing The Complaint Alleges Neither Harm Nor Causation.**

In order to confirm the authority of federal courts to do anything other than remand, Ford "must show (i) that [Plaintiffs] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 141 S. Ct. at 2203 (citing *Lujan*, 504 U.S. at 560–61). Ford cannot carry this burden, thereby compelling remand. Ford's Motion to Dismiss argued that the Complaint failed to allege either of the first two elements of Art. III standing.

First, Ford argued that the Complaint did not allege that Plaintiffs suffered any injury at all, much less an injury that is concrete, particularized, and actual or imminent. According to Ford, "The FAC contains zero explanation or factual allegations supporting the conclusory assertion that Plaintiffs suffered personal injury as a result of a vehicle downloading text messages or a call log." ER 40. While Ford couched its arguments below as addressing the WPA statutory requirement of an injury to person, business, or reputation, Ford urged the Court that the Complaint alleged no injury to Plaintiffs. Art. III standing requires an injury.

Second, Ford argued against causation. "Plaintiffs' allegations, even if accepted as true, do not establish Ford recorded or intercepted Plaintiffs' text messages. Rather, the FAC, at most, asserts Jones's vehicle—not Ford—obtained text messages through the onboard infotainment system." ER 37. But to carry its burden to show Art. III standing, Ford must convince the Court that, as alleged in the Complaint, "the injury has to be fairly traceable to the challenged action of the

defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (cleaned up). Ford sought to avoid liability on the grounds that the (supposedly non-existent) injury was ***not*** traceable to Ford, but instead was the independent action of the vehicle (or Plaintiffs).

In other words, according to Ford's Motion to Dismiss, the Complaint fails to allege Art. III standing by failing to allege either (1) injury to Plaintiffs or (2) causation by Ford. Naturally, in an attempt to avoid remand, Ford never mentioned Art. III. But standing is an "irreducible constitutional minimum." *Lujan*, 504 U.S. at 560. Ford cannot secure an adverse judgment on the merits from a federal court after first invoking federal jurisdiction, then arguing that the Complaint fails to allege facts sufficient to show two of three elements of that irreducible constitutional minimum. Instead, the case must be remanded:

> In an ordinary removal case, 'if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.' § 1447(c). ***No motion, timely or otherwise, is necessary: ultimate responsibility to ensure jurisdiction lies with the district court.***

*Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) (cleaned up) (emphasis added). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

District courts in this Circuit are increasingly familiar with the pattern of this case: a corporate defendant removes, then moves to dismiss on grounds that either

directly or impliedly undermine its assertion of Art. III jurisdiction. District courts routinely recognize the constitutional mandate of remand under these circumstances. A defendant's motion requesting that a federal court dismiss a removed complaint on the merits because it fails to allege elements of standing necessarily means the defendant thereby actually contends that the dispute is not a "case or controversy" suitable for federal resolution. *See, e.g.*, *Morgan v. Bank of Am., N.A.*, 2020 WL 3979660, at *2 (E.D. Wash. July 14, 2020) ("As the party invoking federal jurisdiction, the burden was on Defendant, not Plaintiff, to prove that all the elements of federal jurisdiction were satisfied upon removal. Defendant's attempt to invoke federal jurisdiction for purposes of removal and then argue for dismissal based on the lack of standing—a fundamental element of this Court's jurisdiction—does not satisfy its burden."); *Terrell v. Costco Wholesale Corp.*, 2017 WL 2169805, at *1 (W.D. Wash. May 16, 2017) (remanding where defendant removed then argued against injury sufficient to confer standing, "neither party attempts to rebut the presumption that the court lacks subject matter jurisdiction."); *Ayala v. Sixt Rent a Car, LLC*, 2019 WL 2914063, at *2 (C.D. Cal. July 8, 2019) (remanding where defendant removed then moved to dismiss under FED. R. CIV. P. 12 because "plaintiff lacks Article III standing because he has not suffered an injury in fact.").

Presumably aware of these cases, Ford attempted to avoid remand by elevating form over substance. Instead of arguing directly that Plaintiffs lacked standing, Ford instead moved to dismiss under Rule 12(b)(6), on the grounds that the Complaint failed to allege two elements of Art. III standing, without ever

mentioning jurisdiction, Rule 12(b)(1), or the Constitution. This makes no substantive difference, nor any difference to the standard of review applicable below or in this Court. Ford invoked federal jurisdiction and bears the burden of rebutting the presumption against jurisdiction. It cannot rebut that presumption while arguing that the Complaint fails to allege facts showing an injury to Plaintiff or an act by Ford that caused the injury. This Court must vacate the decision below with instructions to remand the case to Thurston County Superior Court.

## C. Ford Attempted To Shift Its Jurisdictional Burden By Citing Plaintiffs' Response To Ford's Motion.

In the Court below, Ford dropped a footnote that purported to disclaim any responsibility to convince the federal courts of Art. III jurisdiction, arguing in its Reply that "Plaintiffs have not sought to remand this case to state court, nor do they assert in their Opposition that they lack Article III standing. Neither party, accordingly, has questioned Plaintiffs' Article III standing at this time, based on the allegations in the Complaint." ER 30. Ford's position mandates vacatur and remand. "It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record. And it is the burden of the party who seeks the exercise of jurisdiction in his favor, clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (cleaned up). Ford's stance proposed to completely reverse the jurisdictional burden, asking the district court to assume the existence of Art. III jurisdiction as impliedly asserted by Ford, unless and until Plaintiff, who did not invoke federal jurisdiction, contested it.

This upends the centuries-old "fair presumption that a cause is without its jurisdiction, until the contrary appears." *Turner v. Bank of N. Am.*, 4 U.S. 8, 10 (1799) (cleaned up). Instead, Ford turned its own obligation into a Catch-22 for Plaintiffs, asking the Court to assume that Art. III jurisdiction existed, unless and until Plaintiffs agreed with the substance of Ford's Motion—that the Complaint did not allege injury or causation. As a fig leaf to excuse its disregard of this obligation, Ford insisted that its Motion only addressed "statutory harm," and asserted, without support, that "The WPA's injury requirement is a different, higher standard that Plaintiffs must satisfy." ER 42. True or not (and contradicted by federal and state case law, as discussed below), Ford never identified any allegation in the Complaint that ***Ford*** agreed constituted an injury to either Plaintiff. The opposite: Ford insisted that the Complaint alleged no injury at all. Nor did Ford ever address the constitutional requirement of causation. Again, the opposite: Ford insisted that the allegations of the Complaint failed to allege causation by Ford. In doing so, Ford asked the Court to assume jurisdiction in order to pass dispositive judgment on the merits of Plaintiffs' claim. This it cannot do. "Jurisdiction is vital only if the court proposes to issue a judgment on the merits." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). Ford has no constitutional entitlement to a federal judge, rather than a state judge, deciding that the Complaint does not allege injury or causation. "The prerequisites to the exercise of jurisdiction are specifically defined . . . They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor. He must allege in his pleading the facts essential

to show jurisdiction. If he fails to make the necessary allegations he has no standing." *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936).

Ford will no doubt urge this Court that it is entitled to remove a diverse case with a sufficient amount in controversy, and that it is entitled to file a Rule 12 Motion to test the sufficiency of the Complaint. It is not entitled to do both in series in federal court where the Motion challenges the existence of injury and causation, both of which are required for Art. III jurisdiction. If Ford contends that the Complaint fails to allege harm or causation, its remedy lies in WASH. SUPER. CT. CIV. R. 12(b)(6), the verbatim analog of FED. R. CIV. P. 12(b)(6). In binding judicial admissions, Ford has asserted that it cannot, does not, and will not shoulder its burden to show federal jurisdiction over this dispute. The decision below must be vacated with instructions to remand. Plaintiffs' arguments below, that Ford fails on the merits, do not fulfill or supplant Ford's burden. Instead, this Court's review must end here. Any attention this Court pays to the balance of Plaintiffs' argument on appeal must proceed only after the Court concludes that Ford has already met its burden to demonstrate injury, causation, and redressability in the Complaint. Such a finding also binds Ford to continue to meet that burden at every subsequent phase of litigation. "Each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (cleaned up).

### D. Ford's Success Below Judicially Estops It From Arguing Allegations Of Injury Or Causation To This Court.

In urging dismissal under Fed. R. Civ. P. 12(b)(6), Ford took the position that the Complaint fails to allege sufficient facts under a plausible legal theory to demonstrate Art. III jurisdiction—again, without mentioning Art. III. It succeeded, and the court below dismissed for the reasons put forward by Ford. Ford is judicially estopped from reversing itself here, and arguing in favor of injury and causation but seeking dismissal on other, non-constitutionally mandatory grounds. The three elements of judicial estoppel are: "First, a party's later position must be clearly inconsistent with its earlier position. Second, courts inquire whether the party succeeded in persuading a court to accept that party's earlier position. Third, courts look to whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Clark v. S&J Advertising, Inc.,* 611 B.R. 669, 679 (E.D. Cal. 2019). All three elements are met here: (1) Ford has previously argued that Plaintiffs did not allege injury or causation; (2) Ford succeeded in the court below that its position was correct; and (3) Ford would gain an unfair advantage by securing dismissal on the merits in its preferred federal forum after denying the elements of Art. III jurisdiction. Having dressed its litigation bed with the sheets of Art. III and blanket of Rule 12(b)(6), Ford must now lie in it. It cannot seek to remain in federal court and procure appellate confirmation of the dismissal below on alternate grounds, contending to this Court that it erred below in challenging injury and causation.

## II. PLAINTIFFS' COMPLAINT ALLEGES FACTS SUFFICIENT TO SHOW A MERITORIOUS WPA CLAIM.

The decision below disregarded the holdings of specific WPA cases, discussed in greater detail below. It also did not adopt the long-standing Washington Supreme Court's interpretive stance over the WPA. "Washington's privacy act is one of the most restrictive in the nation." *State v. Faford*, 128 Wash. 2d 476, 481 (1996). The Washington Supreme Court has repeated this description of the WPA repeatedly over the course of decades. "Washington's privacy act, chapter 9.73 RCW, which prohibits ***anyone not operating under a court order*** from intercepting or recording certain private communications without the consent of all parties, is one of the most restrictive surveillance laws ever promulgated." *State v. Hinton*, 179 Wash. 2d 862, 871 (2014) (emphasis added). "As originally adopted, RCW 9.73 is one of the most restrictive electronic surveillance laws ever promulgated." *State v. O'Neill*, 103 Wash. 2d 853, 878 (1985). The Washington Supreme Court has never wavered in this broad interpretation of the statute, always applying it to emerging technologies, rather than finding that emerging technologies render it anachronistic or inapplicable. "The sustainability of our broad privacy act depends on its flexibility in the face of a constantly changing technological landscape. We will not permit the mere introduction of new communications technology to defeat the traditional expectation of privacy . . ." *Faford*, 128 Wash. 2d at 485–86. The court consistently extends the protections of the WPA to new and emerging technologies. "The State of Washington has a long history of extending strong protections to telephonic and other electronic communications. . . Our present statute is broad, detailed and

extends considerably greater protections to our citizens in this regard than do comparable federal statutes and rulings thereon." *State v. Gunwall*, 106 Wash. 2d 54, 66 (1986). And, "this State's privacy act, RCW 9.73, is broad, detailed, and extends considerably greater protection to Washington citizens than do comparable federal statutes." *State v. Goucher*, 124 Wash. 2d 778, 785 (1994). Reading the WPA in this broad, remedial light, adapted to changing technological circumstances, coupled with the requirement to read the fact allegations in the light most favorable to Plaintiffs, and this Court must conclude that it alleges WPA violations, caused by Ford, and which injured Plaintiffs.

### A. The Complaint Alleges Specific, Detailed, Knowing, Voluntary Actions By Ford That Resulted In Interception And Copying.

Four elements establish a violation of the WPA:

There must have been (1) a private communication transmitted by a device, which was (2) intercepted or recorded by use of (3) a device designed to record and/or transmit (4) without the consent of all parties to the private communication.

*State v. Roden*, 179 Wash. 2d 893, 899 (2014).[2] The Complaint alleges facts to show that each of these elements is met. It also alleges extensive facts showing that Ford's actions were both the cause in fact and the legal proximate cause of the interception and recording.

---

[2] It should be noted that "damages" are not an essential element of a WPA cause of action as elucidated by the Washington Supreme Court.

### 1. Extensive Fact Allegations Show Ford's Conduct Caused The WPA Violation.

The Complaint contains specific, detailed allegations that Ford intentionally designed its infotainment systems to intercept and record texts and call logs. *See, e.g.*, ER 45, Complaint ¶ 35 (Berla worked with Original Equipment Manufacturers to design systems with intercept/ recording functions); ER 47, *id.* ¶¶ 43; 45 (Berla touting support for extracting data from Ford vehicles) ER 49, *id.* ¶ 53 (alleging that Ford and other OEMs decided to design their infotainment systems to retain and transmit deleted data); ER 54, *id.* ¶ 81 (specific allegations of extracting texts from a Ford infotainment system). It alleges facts to show that consumers, including Plaintiffs, are unaware of this function. ER 47-48, *id.* ¶¶ 47-50; ER 53-54, *id.* ¶¶ 79-82. It alleges that the infotainment systems perform this undisclosed function automatically upon a phone being connected by Bluetooth or USB. ER 43-44, *id.* ¶¶ 17-23. The Complaint thus alleges that Ford knowingly and intentionally built and sold a device that would copy and permanently store call logs and text messages from Plaintiffs' phones whenever the infotainment system was used as Ford designed and intended it to be used.

These acts, as alleged, show that Ford was the "cause in fact" of the alleged violations. "Cause in fact refers to the 'but for' consequences of an act—the physical connection between an act and an injury." *Meyers v. Ferndale Sch. Dist.*, 197 Wash. 2d 281, 289 (2021). ***But for*** Ford's decisions and actions—as alleged in the Complaint—the interception and recording would not have taken place. Washington state is hardly unique in this description of tort causation. "It is textbook tort law

that a plaintiff seeking redress for a defendant's legal wrong typically must prove but-for causation. Under this standard, a plaintiff must demonstrate that, but for the defendant's unlawful conduct, its alleged injury would not have occurred." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020) (cleaned up). The decision below simply ignores black letter tort law in reading the Complaint as alleging acts only by the device which Ford designed and installed.

### 2. Intervening Acts Do Not Change Proximate Cause.

The court below disregarded all allegations showing "but for" causation by Ford. The court instead focused exclusively on Plaintiffs' intervening acts. The analysis in the court below finds no support in any Washington tort law, and certainly not in cases applying the WPA.

To the court below, Ford argued that Plaintiffs caused the violation by turning on the Ford vehicle and connecting a smartphone. The Court agreed: "There are no allegations that Ford . . . ***forces*** an owner to use the infotainment system to operate the vehicle." ER 19. This demand—that a WPA violation result from actions ***compelled*** by the alleged violator—has no support in any case law. The Washington Supreme Court routinely enforces the WPA in favor of individuals whose private communications are intercepted or recorded, without considering whether or not the communication was compelled, or the violator mandated use of the system that intercepted and recorded the private communication. In *State v. Kipp*, 179 Wash. 2d 718 (2014), for example, the court did not hesitate to find a WPA violation which required the exclusion of a father secretly recording his brother-in-law voluntarily admitting to the rape of the daughters of the man who secretly recorded the

conversation. And in *State v. Christensen*, 153 Wash. 2d 186 (2004), a mother violated the WPA when she intercepted private telephone call between daughter and her daughter's boyfriend by using the speakerphone portion of a telephone while the two discussed the boyfriend's commission of a robbery. It did not matter that the mother owned the phone and the daughter, living at home, had to use her mother's telephone equipment, with its speakerphone function, in order to have a private phone conversation.

Instead, consistent with extensive WPA case law, the fact allegations of the Complaint allege conduct **by Ford** that constitutes violations of at least RCW 9.73.030 and RCW 9.73.260. Ford, as a result of decisions Ford made, proximately caused the alleged interception and recording. Plaintiffs' intervening acts — turning on the vehicle and connecting a smartphone as designed, intended, and reasonably foreseen by Ford — do not alter the legal consequences of Ford's actions. "An intervening cause breaks the chain of causation only if the intervening event is so unexpected that it falls *outside the realm of the reasonably foreseeable*." *Pacheco v. United States*, 515 P.3d 510, 523 (Wash. 2022) (emphasis added). Nothing could be more foreseeable, or more expected, than the act of a vehicle owner who elects to operate the vehicle and its subsystems exactly as they were designed to be operated. Plaintiffs' act of using the vehicle and its on-board infotainment system do not break the chain of Ford's proximate causation of the alleged injury. Instead, only "[w]hen an independent intervening act of a third person is one which was *not reasonably foreseeable* . . . is [there] a break in the causal connection between the defendant's negligence and the plaintiff's injury." *Schooley v. Pinch's Deli Mkt., Inc.*,

134 Wash. 2d 468, 482 (1998) (emphasis added). Using the vehicle and its infotainment system exactly as intended is reasonably foreseeable. Plaintiffs' acts therefore do not alter proximate causation. "Defendant's actions are the cause in fact of plaintiff's injuries if the defendant's wrongdoing produced the injuries complained of and any intervening cause was reasonably foreseeable." *McCoy v. Am. Suzuki Motor Corp.*, 136 Wash. 2d 350, 358 (1998) (cleaned up).

The text of the WPA itself compels this conclusion, because the statute explicitly forbids the use of any device "regardless how such device is powered *or actuated* . . ." RCW 9.73.030(1)(a) (emphasis added). And RCW 9.73.260 forbids any person from ***installing*** a pen register. The Washington Supreme Court has never held, for example, that a police wiretap evades the protections of the WPA simply because the bug is activated by the target's phone. Ford can no more evade responsibility for its intentional conduct, as alleged in the Complaint, than could any other individual, corporation, or state government entity could freely violate the WPA by the expedient of employing a device actuated by the targeted user. The statute itself forecloses that defense, as does black letter tort law.

### 3. Dicta From *State v. Bilgi* Means The Complaint Alleged Ford, Not The Infotainment System, Is Liable.

The district court erroneously relied on dicta from a single case, *State v. Bilgi*, 19 Wash. App. 2d 845 (2021), to dismiss the Complaint on causation grounds. It concluded—erroneously—that because it thought that the Complaint alleged that "only the infotainment system without agency that intercepts, records, and stores the communications, [therefore] the FAC fails to assert sufficient facts to establish

Ford is engaging or has engaged in a WPA violation." ER 19. The WPA "prohibits 'any individual, partnership, corporation, association, or the State of Washington, its agencies and political subdivisions" from the acts complained of. The court below opined that because "an infotainment system installed in a vehicle . . . is not an individual, partnership [or] corporation…", and because the vehicle "is not alleged to be acting in any agency capacity on behalf of Ford" during the acts complained of, Ford cannot be held liable. ER 14 ("there is no assertion Ford – other than having designed and installed the infotainment system – reviews, utilizes, benefits from, or even has the ability to retrieve the cellphone data collected. . . .")

This conclusion ignores the extensive fact allegations that Ford acted in designing and installing the infotainment system. The system is Ford's instrumentality, not something with independent agency. Further, the court below explicitly added to the WPA a requirement precluded by the statutory text: a demand that the person who violates the WPA by intercepting and/ or recording subsequently "review[], utilize[], benefit[] from, or even ha[ve] the ability to retrieve," ER 14, the wrongly intercepted or recorded communications. None of these acts are required by the text of the statute for a plaintiff to allege a completed violation of the WPA.

As detailed above, the court below disregarded the extensive fact allegations showing Ford's active undertaking that proximately caused the injury. The district court also misread and misapplied a single sentence of dicta from *Bilgi*, that the computer program "Callyo is a computer software, not an actor with agency." ER 19 (citing *Bilgi*, 19 Wash. App. 2d at 858). The court below quoted three sentences

of the *Bilgi* opinion, omitting the prior three sentences, which began the discussion by noting that "any argument that Callyo independently intercepted Bilgi's communications was not preserved for appeal." *Id.*

*Bilgi* was a WPA challenge to the admissibility of evidence, with the goal of overturning a sex offense conviction. Bilgi had sent text messages to a specific telephone number. It so happened that the hardware and software capable of sending and receiving messages at that number was not a smartphone. Instead, the equipment could have been, but was not necessarily, handheld. Indeed, Bilgi himself used a similar system, namely, "Google Voice, 'a voiceover internet number' that was not connected to his cellular phone." *Id.* at 849. Like an iPhone, or a device operating with the Android OS, or myriad other hardware and software systems that text, Callyo worked on any computer capable of using the internet over Ethernet, WiFi, or cellular radio frequencies to exchange messaging.

Bilgi sent messages to that number—a perfect stranger to Bilgi. He thought he was texting a 13 year old boy to solicit sex, but, as it turned out, the person managing the number he texted was a Washington State Patrol detective. The messages Bilgi sent arrived as intended, and were read by the person(s) who controlled the number he texted. Therefore, the court concluded, following decades of Washington Supreme Court case law interpreting the WPA, the recipients did not intercept the texts, which were sent and received as intended.

Bilgi argued that the adult police officer intercepted the texts because Bilgi thought he was texting a 13 year old boy. *Id.* at 858-859. Bilgi cited no case in support of this theory of interception. He had none to cite, because prior cases applying the

WPA and state constitution had long found that, although a person has a privacy interest in text messages, communications directed to a stranger are not intercepted in violation of the WPA merely because the sender misapprehends the identity of the recipient. *See, e.g.*, *State v. Townsend*, 147 Wash. 2d 666 (2002); *Matter of Hopper*, 4 Wash. App. 2d 838, 842 (2018) (underage female's pimp did not intercept messages sent to phone number listed on Backpage.com when sender knew he texted a stranger, even though he thought the stranger he texted was the female, not the pimp); *State v. Pouncy*, 20 Wash. App. 2d 1019 (2021) ("It does not matter that Pouncy believed he was sending these messages to 'Alexis' rather than directly to Detective Klein.").

Bilgi also argued that even if the detective who posed as the 13 year old and messaged him had not intercepted his texts, any other participating officer who saw them had done so. This challenge was also foreclosed. WPA case law repeatedly held that, despite a privacy interest, the sender must know that the recipient can decide to share a text. *See, e.g.*, *State v. Glant*, 13 Wash. App. 2d 356, 368, review denied, 196 Wash. 2d 1021 (2020) ("when a person voluntarily communicates with a stranger, that person assumes the risk that the conversation will not be confidential").

This, of course, stands in sharp contrast to cases where an intended recipient ***does not*** intend to share the message. Where police read or respond to messages intended for another person, without that person's authorization, those messages are intercepted. "The possibility that an unintended party can intercept a text message due to his or her possession of another's cell phone is not sufficient to

destroy a reasonable expectation of privacy in such a message." *State v. Roden*, 179 Wash. 2d 893, 901 (2014). Thus, in *Roden*, the Court found interception where a police detective took an arrestee's cell phone, then read and responded to messages which the intended recipient—in a holding cell—did not see, nor authorize police to see.

Finally, as a last gasp on appeal—and not raised at trial—Bilgi claimed that the software intercepted the texts. This argument was not preserved for appeal by Bilgi. The comments by the intermediate appellate court are therefore dicta, but were nonetheless mistakenly relied on by the court below as dispositive of Plaintiffs' claims. But even adopting the dicta of the court of appeals in *Bilgi*, its reasoning in rejecting the argument implicates **Ford**, not the infotainment system. In *Bilgi*, the police had a choice of hardware and software systems to use to send and receive text messages. They elected to use "Callyo," a system marketed by Motorola. They paid for the system, set it up, established passwords, and, in short, took all necessary steps to ensure that Callyo would send, receive, and record text messages within the Callyo system. The police could have used any system, such as the ICQ messenger app used in *Townsend*, 147 Wash. 2d. 666, or Google Hangouts as used in *State v. Racus*, 7 Wash. App. 2d 287 (2019). The fact that they elected to use Callyo did not turn software into an actor, anymore than a person swapping a SIM card from an iPhone to an Android device could shift liability for a WPA violation away from the person to Apple, and then to another entity.

Instead, the *Bilgi* decision makes clear that causation for the tort of violating the WPA is identical to classic tort causation as applied in every other context. In

*Bilgi*, the WSP acted to select and implement a software and hardware package that could send and receive text messages. The police could have elected to use iPhones, but that would not legally result in Apple intercepting messages. They could have used Google Hangouts as in *Racus*, but that would not produce the legal result that Google intercepted messages. Instead, in *Bilgi* as in every other WPA case, if a court found that a specific communication was private and intercepted, the interception was done by the person who used the intercepting device, regardless of the hardware or software the sender and recipient elected to use.

Here, Ford elected to use a specific set of hardware and software, namely the vehicle infotainment system, to accomplish its intended purpose of secretly intercepting and recording Plaintiffs' communications. To the extent "agency" is required by the WPA, Ford satisfies it by installing illegal surveillance devices on every Ford vehicle, with knowledge of the capabilities of those surveillance devices. ER 43, Complaint ¶ 17. The court below was wrong to impose a requirement that the responsible "corporation" be *actively controlling* the surveillance device at the time of the alleged violation, or that the actor procure some benefit from it. Such a restrictive interpretation goes against all guidance by the Washington Supreme Court that the WPA is to be construed with "flexibility in the face of a constantly changing technological landscape." *Faford*, 128 Wash. 2d at 485–86. The lower court's opinion would allow surveillance devices to be implanted in all manner of consumer goods in a manner never intended by the Washington legislature or the Washington Supreme Court. The WPA instead "prohibits anyone not operating under a court order from intercepting or recording certain private communications

without the consent of all parties . . ." *Hinton*, 179 Wash. 2d at 871. It also disregard the explicit statutory text that liability attaches "regardless how the device is powered or actuated . . ." RCW 9.73.030.

And whatever Ford intended (or did not intend) to *do with* those communications *after* they were intercepted and recorded are legally irrelevant under the WPA, except perhaps to determine the extent of *actual*—as opposed to statutory—damages available to private plaintiffs.

### B.    The Complaint Alleges Injury To Plaintiffs' Persons.

#### 1.    The Statute's Text And History Show That The Violation Alone Constitutes Actionable Injury.

The Washington legislature added a private right of action for electronic eavesdropping to the WPA in 1967, and added the statutory damages remedy in 1977. In doing so, the Legislature created a statutory cause of action for pre-existing common law torts of invasion of privacy that the Washington Supreme Court did not fully recognize as available under Washington common law until 1998. *See Reid v. Pierce Cnty.*, 136 Wash. 2d 195, 206 (1998) ("So that no further confusion exists, we explicitly hold the common law right of privacy exists in this state and that individuals may bring a cause of action for invasion of that right.") In *Reid*, the Court pointed out that it had suggested the availability of the common law right of privacy as described in the RESTATEMENT (SECOND) OF TORTS § 652 (1977) since at least 1978. *Id.* at 205.

The Washington Privacy Act predates even Washington's admission to the Union. Its ban on divulging a telegram, now codified at RCW 9.73.010, dates back to

the code of 1881, eight years before the state's admission. After some modifications, the WPA remained untouched by the Legislature from 1909 until 1967. The 1967 Legislature, in its special session, added an extraordinarily broad cause of action for electronic eavesdropping, the statute that the Washington Supreme Court has subsequently described as "one of the most restrictive electronic surveillance laws ever promulgated." *O'Neill*, 103 Wash. 2d at 878 (Dore, J. concurring in part); *see also State v. Smith*, 189 Wash. 2d 655, 661 (2017) (same, collecting citations). The new law barred conduct by any person or entity: "any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions . . ." RCW 9.73.030.[3] This broad definition effectively covers every possible person or organization.

The new law also barred an extraordinary range of conduct, in language that admitted of no discernable exceptions:

It shall be unlawful . . . to intercept, record or divulge[4] any:

(1) Private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered

---

[3] The text of the 1967 enactment, Laws of 1967 Chapter 93, is available at https://leg.wa.gov/CodeReviser/documents/sessionlaw/1967ex1c93.pdf.

[4] The Legislature removed the ban on "divulging" in the 1977 amendments that added the statutory damages remedy. As discussed below, this precludes the district court's finding that subsequent disclosure was a condition precedent to an injury.

or actuated, without first obtaining the consent of all the participants in the communication;

(2) Private conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation.

Finally, the Legislature created the broadest possible basis for recovery:

Any person who, directly or by means of a detective agency or any other agent, violates the provisions of section 1 of this act shall be subject to legal action for damages, to be brought by any other person claiming that a violation of this statute has injured his business, his person, or his reputation. A person so injured shall be entitled, in addition to other injuries, to recover for mental pain and suffering endured by him on account of violation of the provisions of section 1 of this act.

The private right of action the 1967 Legislature enacted mimics the broad, remedial language of the Consumer Protection Act, enacted six years earlier in 1961. But the WPA private right of action goes much further than does the CPA. Unlike the CPA, the WPA protects against personal injury. *Cf.* RCW 19.86.090, Laws of 1961 c 216 § 9.[5] And unlike the CPA, in 1967 the Legislature explicitly provided for damages for mental pain and suffering in addition to "actual damages."

The 1967 Legislature was certainly aware of the scope of the tort of invasion of privacy. By 1967, neighboring California courts had long since recognized that invasion of privacy was a wrong of a *personal* character. It was this exact character of

---

[5] Available at
https://leg.wa.gov/CodeReviser/documents/sessionlaw/1961c216.pdf.

right that the 1967 Legislature protected, a point this Court had opportunity to acknowledge a few years later:

> California courts have observed that 'the gist of the cause of action in a privacy case is not injury to the character or reputation, but a direct wrong of a personal character resulting in injury to the feelings without regard to any effect which the publication may have on the property, business, pecuniary interest, or the standing of the individual in the community.' *Fairfield v. American Photocopy Equip. Co.*, 138 Cal.App.2d 82, 86, 291 P.2d 194, 197 (1955).

*Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821, 824 (9th Cir. 1974). By its plain text, the 1967 enactment gave rise to a cause of action by any person whose privacy was invaded, against any person who occasioned the invasion, whether that person acted directly or through an intermediary. By enacting a statutory privacy violation, the Legislature ***expanded*** the scope of remediable harm beyond what was then recognized at common law. While common law privacy decisions had held that the remedy did not address harm to "property, business, pecuniary interest, or the standing of the individual in the community,[6]" the Legislature explicitly expanded it from not merely personal harm to also include the categories omitted at common law: injury to business or reputation.

Further confirming that the act of invasion alone constitutes the remediable injury—a recovery the Legislature enacted in the absence of an explicit holding from the state Supreme Court recognizing the same tort at common law —the 1977

---

[6] This last phrase means "reputation."

Legislature further expanded the remedies under the statute by adding a statutory damages remedy, together with adding the award of fees and costs of litigation.[7] After 1977, and continuing today[8], the extraordinarily broad WPA remedy reads as follows:

> Any person who, directly or by means of a detective agency or any other agent, violates the provisions of this chapter shall be subject to legal action for damages, to be brought by any other person claiming that a violation of this statute **has injured his or her** business, his or her **person**, or his or her reputation. A person so injured shall be entitled to actual damages, including mental pain and suffering endured by him or her on account of violation of the provisions of this chapter, or liquidated damages computed at the rate of one hundred dollars a day for each day of violation, not to exceed one thousand dollars, and a reasonable attorney's fee and other costs of litigation.

Laws of 1977 c 363 § 2, codified at RCW 9.73.060 (emphasis added). The 1967 statute codified an expanded remedy for the common law tort of invasion of privacy, allowing recovery for injuries not necessarily recognized as remediable at common law. It undoubtedly allowed recovery for the injury to the person resulting from the "direct wrong" of invasion of privacy. In 1977, the Legislature gave even more teeth to the WPA's protections, allowing statutory (liquidated) damages recovery, without proof of actual damages. Further confirming that **any** invader of privacy is thereby liable to the person whose privacy he invades, the 1977 Final Legislative report characterized this addition to the statute as follows:

---

[7] The 1977 amendments are available at
  https://leg.wa.gov/CodeReviser/documents/sessionlaw/1977ex1c363.pdf.

[8] Gender neutral language of "his or her" is a later addition.

> A person violating the provisions of this chapter is liable to the injured party for actual damages including mental pain and suffering, and, in the alternative, liquidated damages at the rate of $100 per day up to $1,000, and reasonable attorney's fees and costs.

1977 Final Legislative Report pp. 146-47.[9] This description confirms what the text and history state: a person who violates the statute thereby injures the person whose privacy he invades. The victim may sue, because he is injured in his person by the invasion (just as at common law), and may recover liquidated damages.

###### 2. The Acts Alleged Constitute Actionable Common Law Invasion Of Privacy, Specifically, Intrusion On Seclusion.

The Washington Supreme Court's 1998 recognition of the common law applicability of invasion of privacy eliminates any possible doubt that Plaintiffs allege injury to their "person," satisfying the statute. Plaintiffs allege that Ford, without their knowledge or consent, creates a second copy of text messages and call logs from a phone connected to the infotainment system. These acts themselves caused injury to Plaintiffs' long recognized privacy interests. The harms made actionable in the WPA track the common law tort of invasion of privacy, in its species of intrusion on seclusion, as later expounded in the RESTATEMENT (SECOND) OF TORTS and eventually confirmed as applicable in Washington common law by the state Supreme Court.

---

[9] Available at https://leg.wa.gov/LIC/Documents/Historical/Final%20Legislative%20Reports/1977FinalLegRpt.pdf (pp. 182-183 of the pdf).

As described in the RESTATEMENT (SECOND), "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." RESTATEMENT (SECOND) OF TORTS § 652B. The RESTATEMENT adds two comments to further clarify the nature of the tort:

a. The form of invasion of privacy covered by this Section does not depend upon any publicity given to the person whose interest is invaded or to his affairs. It consists *solely of an intentional interference with his interest in solitude or seclusion*, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man.

b. The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home. It may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or *tapping his telephone wires*. It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents. *The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined.*

*Id.* (emphasis added) (citing in "Reporters Notes" exemplary cases: "The information obtained need not be used. *Fowler v. Southern Bell Tel. & Tel. Co.*, 343 F.2d 150 (5 Cir. 1965); *cf Corcoran v. Southwestern Bell Tel. Co.*, 572 S.W.2d 212 (Mo.

App. 1978) (no publication required). In *Hamberger v. Eastman*, 106 N.H. 107, 206 A.2d 239 (1964), the installation of a listening device in a bedroom was held to be an invasion of privacy, even though nothing was overheard.")

This precisely tracks the kind of conduct made actionable by the 1967 Legislature, and alleged in the Complaint here. Here, just as at common law, injury to the person results from an invasion of privacy, without more.

The Washington Appellate courts have followed the same Restatement rule expounded by this Court and the United States Supreme Court in recognizing that the tort of invasion of privacy does not require republication, dissemination, or subsequent access to the private affairs by a third party. As the Supreme Court recognized, "both the common law and the literal understandings of privacy encompass the individual's ***control of information*** concerning his or her person." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989) (emphasis added). This Court, too, expounding on the Restatement (adopted by the Washington Supreme Court), said that "privacy torts do not always require additional consequences to be actionable. *See, e.g.*, Restatement 2d (Torts) § 652B cmt. b. (Am. Law Inst. 1977) (recognizing the tort of intrusion upon seclusion, for which the 'intrusion itself' makes the defendant liable)." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017).

### 3. No Subsequent Access Or Disclosure Is Required.

The court below found that the facts alleged in the Complaint did not suffice to show an injury because Plaintiffs did not allege the recordings have yet been accessed or disclosed. ER 20. But as detailed above, this is not an element of the

common law tort. It is also explicitly *not* an element of a statutory violation, having been added in 1967 but removed in 1977.[10] As the Washington intermediate appellate courts have recognized, the amendment means that the secondary act of "divulging" private communications, even those wrongly obtained in violation of the WPA, does not give rise to a statutory cause of action. "The Legislature has chosen to create liability only for nonconsensual recording or intercepting, not divulging, private conversations." *Kearney v. Kearney*, 95 Wash. App. 405, 412 (1999) (discussing the legislative history of deleting "divulge" from the WPA). If divulging a private conversation does not violate the statute, or cause the recipient to violate the statute, it cannot be a *required* condition to a statutory injury.

> **4.** **This Court's Decision in *Patel* Shows That Statutory Privacy Laws Incorporate The Common Law Standard Of Violation Equaling Actionable Injury.**

The Ninth Circuit decision in *Patel v. Facebook*, 932 F.3d 1264 (2019), demonstrates that Ford's violation of the WPA constitutes an injury to the "person." There, the court considered an Illinois statute much like the WPA that protected "biometric data." *Id.* at 1273-74. The Ninth Circuit found that intrusion upon seclusion itself constitutes an "injury" under common law. *Id.* at 1271-73; *cf. Armijo v. Yakima HMA, LLC*, 2012 WL 2576624, at *2 (E.D. Wash. July 3, 2012) (describing elements of intrusion upon seclusion, which do not include disclosure or

---

[10] *See* Laws of 1977 c 363 § 1, https://leg.wa.gov/CodeReviser/documents/sessionlaw/1977ex1c363.pdf (Amending RCW 9.73.030 to delete "divulge" from violations).

economic damages); *Reid*, 136 Wash. 2d at 205 n.4 (1998) (quoting Restatement (Second) Torts § 652H for the principle that a plaintiff may recover "the harm to his interest in privacy resulting from the invasion").

Moreover, like the Washington legislature, the Illinois legislature and courts concluded that individuals were "not required to sustain a 'compensable injury beyond violation of their statutory rights before they may seek recourse.'" *Patel*, 932 F.3d at 1274 (citing cases). This is because "[w]hen a private entity fails to adhere to the statutory procedures . . . the right of the individual to maintain his or her biometric privacy vanishes into thin air." *Id.*, citing *Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197 (Ill. Sup. Ct. 2019). Of course, that is exactly one of the harms alleged here: Plaintiffs lost the ability to access, control, or delete the private information wrongfully intercepted and recorded by Ford. ER 44, Complaint ¶ 19.

Plaintiffs cannot use the Ford infotainment system for the legally required purpose of hands-free calling and texting without Ford making unconsented copies of private communications, such that Plaintiffs can no longer even delete it. Plaintiffs are thereby injured. Ford merely asserts that, in its view, this is not an injury. It has no basis for its assertion that depriving a person of access to, and the ability to delete, a private conversation is ***not*** an injury the statute contemplates, it merely wishes it weren't. *Patel* rebuts this, as do *Armijo* and *Reid*.

The *Patel* court found that "[b]ecause the privacy right protected by [the Illinois statute] is the right not to be subject to the collection and use of such biometric data, Facebook's alleged violation of these statutory requirements would necessarily violate the plaintiffs' substantive privacy interests." *Patel*, 932 F.3d at

1274. In other words, invasion of privacy *itself* causes injury to the "person" without requiring subsequent disclosure, or mental anguish, or economic damages. The violation of privacy *is* the injury. This is why the Washington legislature provided for statutory damages, because in many cases, such as this one, economic damages do not exist.

## Conclusion.

Ford bears the permanent burden of demonstrating this Court's Art. III jurisdiction, by convincing the Court that Plaintiffs alleged that Ford caused them a concrete, remediable injury. Ford rebutted its burden in its Rule 12(b)(6) arguments below, and the court should have remanded the case to Thurston County Superior Court. Ford is judicially estopped from reversing its position to this Court. As a result, the party with the burden to demonstrate jurisdiction cannot do so, and the decision below must be vacated and the case remanded to state court.

Should this Court conclude that Ford has met its jurisdictional burden, the decision below must be reversed. Plaintiffs alleged remediable injuries under the WPA, caused by Ford's actions.

///

///

///

///

///

October 6, 2022

| ARD LAW GROUP PLLC | THE RESTIS LAW FIRM P.C. |
|---|---|
| By ~~_____~~<br><br>Joel B. Ard, WSBA # 40104<br>P.O. Box 11633<br>Bainbridge Island, WA 98110<br>(206) 701-9243<br>Joel@Ard.law<br>Attorneys for Plaintiffs-Appellants | */s/ William R. Restis*<br>william@restislaw.com<br>402 West Broadway, Suite 1520<br>San Diego, CA 92101<br> (619) 270-8383 |

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-35447

I am the attorney or self-represented party.

**This brief contains** | 10,764 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(•) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ( ) it is a joint brief submitted by separately represented parties;

    ( ) a party or parties are filing a single brief in response to multiple briefs; or

    ( ) a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [          ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Joel B. Ard     **Date** | Oct 6, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**          *Rev. 12/01/2018*