# No. 22–35447

IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

―――

**MARK JONES and MICHAEL McKEE,**
*Plaintiffs-Appellants,*

*v.*

**FORD MOTOR COMPANY,**
*Defendant-Appellee.*

―――

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
DAVID G. ESTUDILLO, DISTRICT JUDGE • CASE NO. 3:21-CV-05666-DGE

―――

# ANSWERING BRIEF

―――

**HORVITZ & LEVY LLP**
PEDER K. BATALDEN
EMILY V. CUATTO
3601 WEST OLIVE AVENUE, 8TH FLOOR
BURBANK, CALIFORNIA 91505-4681
(818) 995-0800

**DLA PIPER US LLP**
ANTHONY TODARO
JEFFREY B. DEGROOT
701 FIFTH AVENUE, SUITE 6900
SEATTLE, WASHINGTON 98104-7029
(206) 839-4800

ATTORNEYS FOR DEFENDANT-APPELLEE
**FORD MOTOR COMPANY**

# DISCLOSURE STATEMENT

Ford Motor Company has no parent corporation. No publicly traded companies have disclosed that they own ten percent or more of Ford's common stock.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES................................................................ii

INTRODUCTION........................................................................ 1

JURISDICTIONAL STATEMENT ...................................................... 3

STATEMENT OF THE CASE ........................................................... 3

SUMMARY OF THE ARGUMENT ...................................................... 6

ARGUMENT .............................................................................. 8

I.   Plaintiffs have Article III standing to sue. ................................. 8

    A.   Plaintiffs pleaded a statutory claim sufficiently close to
        traditional common-law claims to satisfy Article III. ............8

    B.   Plaintiffs' counter-arguments are meritless......................... 10

II.  On the merits, the district court correctly ruled that
    Plaintiffs have not plausibly pleaded a Privacy Act claim............ 14

    A.   Plaintiffs did not plausibly plead that Ford intercepted
        or recorded their calls or texts. ............................................ 14

    B.   Plaintiffs did not plausibly plead a statutory injury............ 19

    C.   The Article III injury is not a statutory injury..................... 25

CONCLUSION ........................................................................... 28

STATEMENT OF RELATED CASES .................................................. 29

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Fed'n of Gov't Emps. Loc. 1 v. Stone*,
   502 F.3d 1027 (9th Cir. 2007) ............................................................. 12

*Ambach v. French*,
   216 P.3d 405 (Wash. 2009) .................................................................. 20

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
   576 U.S. 787 (2015) .............................................................................. 25

*Backhaut v. Apple Inc.*,
   No. 14-CV-02285, 2015 WL 4776427
   (N.D. Cal. Aug. 13, 2015) .................................................................... 26

*Brinkley v. Monterey Fin. Servs., LLC*,
   340 F.Supp.3d 1036 (S.D. Cal. 2018) ................................................. 25

*Canyon County v. Syngenta Seeds, Inc.*,
   519 F.3d 969 (9th Cir. 2008) ............................................................... 26

*Doe v. Chao*,
   540 U.S. 614 (2004) .............................................................................. 25

*Doe v. Gonzaga Univ.*,
   24 P.3d 390 (Wash. 2001) .................................................................... 24

*Ferreira v. Ashcroft*,
   390 F.3d 1091 (9th Cir. 2004) ............................................................. 18

*Gatchalian v. Atl. Recovery Sols., LLC*,
   No. 22-cv-04108, 2022 WL 3754523
   (N.D. Cal. Aug. 30, 2022) .................................................................... 11

*Gonzaga Univ. v. Doe*,
   536 U.S. 273 (2002) .............................................................................. 24

*Gravquick A/S v. Trimble Navigation Int'l Ltd.*,
    323 F.3d 1219 (9th Cir. 2003) ............................................................ 18

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ................................................................ 9

*Kadoranian by Peach v. Bellingham Police Dep't*,
    829 P.2d 1061 (Wash. 1992) ............................................................... 25

*Kearney v. Kearney*,
    974 P.2d 872, 876 (Wash. Ct. App. 1999) ......................................... 16

*Krottner v. Starbucks Corp.*,
    406 F.App'x 129 (9th Cir. 2010) ....................................................... 25

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................. 8

*Morrison v. Nat'l Austl. Bank Ltd.*,
    561 U.S. 247, 254 (2010) .................................................................... 13

*Patel v. Facebook, Inc.*,
    932 F.3d 1264 (9th Cir. 2019) ................................................... 8, 9, 27

*Sebelius v. Auburn Reg'l Med. Ctr.*,
    568 U.S. 145 (2013) ............................................................................ 12

*Shulman v. Kaplan*,
    __ F.4th __, No. 20–56265
    2023 WL 225625 (9th Cir. Jan. 18, 2023) ........................................ 27

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ..................................................................... 8, 27

*State v. Bilgi*,
    496 P.3d 1230 (Wash. Ct. App. 2021) ............................. 14, 17, 18, 19

*State v. Roden*,
    321 P.3d 1183 (Wash. 2014) ............................................................. 14

*State v. Townsend*,
    20 P.3d 1027 (Wash. Ct. App. 2001) ................................................. 14

*State v. Watson,*
    51 P.3d 66 (Wash. 2002) ................................................................. 19

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998).......................................................................... 26

*Tailford v. Experian Info. Sols., Inc.,*
    26 F.4th 1092 (9th Cir. 2022) ................................................. 11, 25

*Tomek v. Apple Inc.,*
    636 F.App'x 712 (9th Cir. 2016)...................................................... 12

*TransUnion LLC v. Ramirez,*
    141 S.Ct. 2190 (2021)....................................................................... 9

*Wood v. City of San Diego,*
    678 F.3d 1075 (9th Cir. 2012) ......................................................... 13

*Van Patten v. Vertical Fitness Grp., LLC,*
    847 F.3d 1037 (9th Cir. 2017) ........................................................... 8

## Statutes

Wash. Rev. Code § 9.73.030(1)(a)............................................................ 14

Wash. Rev. Code § 9.73.060 ......................................................... *passim*

## Rules

Fed. R. Civ. P. 12(b)(1) ........................................................................... 13

Fed. R. Civ. P. 12(b)(6) ...................................................................... 5, 13

## Miscellaneous

*Personal Injury*, Black's Law Dictionary (11th ed. 2019)........................ 20

Restatement (Second) of Torts § 652B (1977).......................................... 23

iv

# FORD'S ANSWERING BRIEF

## INTRODUCTION

Under Washington's Privacy Act, it is unlawful to intercept or record phone calls and other communications without consent. Plaintiffs brought this action claiming Ford violated the Act. They allege the infotainment system on Plaintiff Jones's Ford vehicle (to which a driver connects a smartphone for hands-free dialing, navigational assistance, and other tasks) copies texts and logs calls.

The district court correctly ruled that Plaintiffs' operative complaint fails to state a claim under the Privacy Act. Plaintiffs do not allege the infotainment system transmits their smartphone data *to Ford*. Nor do they allege that Ford has accessed their data or could do so. Plaintiffs allege only that a single Ford *vehicle* accesses their data, and that *third parties* might do so later, using technology not made by Ford. If storing data in a location inaccessible to a defendant were actionable, every manufacturer of computers, smartphones, tape recorders, and similar devices would bear liability under the Act to every consumer who uses or communicates with those products. The district court recognized that the Washington legislature did not intend

1

that astonishing result and correctly ruled that Plaintiffs' speculative allegations fall short of alleging interception or recording by another person or by Ford.

The district court also correctly ruled that Plaintiffs have not plausibly alleged any of the Privacy Act's required statutory injuries— to a business, person, or reputation. Wash. Rev. Code § 9.73.060 (2011). Plaintiffs argue for the middle category, a personal injury, yet they have not articulated how the mere storage of their data onboard Plaintiff Jones's vehicle amounts to a personal injury.

Tacitly acknowledging their failure to plead a statutory injury, Plaintiffs seek to turn the failure to their advantage by arguing it must mean there is no injury in fact furnishing Article III jurisdiction. They argue for vacatur and a remand to state court. But Plaintiffs' argument ignores the distinction between a *statutory* injury and an *Article III* injury, as we explain in detail below. Here, the district court had Article III jurisdiction because Plaintiffs' Privacy Act claim is closely related to common-law privacy torts entertained by common-law courts.

Because the district court had Article III jurisdiction, and properly dismissed the action on the merits, this Court should affirm.

## JURISDICTIONAL STATEMENT

Ford agrees with Plaintiffs that this Court has appellate jurisdiction. (AOB 1.)

Plaintiffs assert that Article III standing to sue is lacking; they therefore seek a remand to state court. (AOB 1, 7–17.) Ford disagrees and contends that Plaintiffs' allegations satisfy Article III standing requirements for the reasons explained in Part I of the Argument section below.

## STATEMENT OF THE CASE

Plaintiff Mark Jones owns a smartphone and a Ford vehicle. (ER-55.) His vehicle contains an infotainment system that connects to his smartphone, allowing him to make hands-free calls, send and receive text messages, obtain navigational assistance, and play music from the phone on his vehicle's speakers. (ER-43.)

Plaintiff Michael McKee has sent text messages to Jones. (ER-56.)

Together, Plaintiffs allege that, when a smartphone is connected to the infotainment system, the system downloads copies of texts and generates logs of phone calls, both of which are then stored on the onboard system. (ER-43–44, 49, 56, 57 ("Plaintiff Jones's Ford vehicle

infotainment system wrongfully retains the recorded copy of Plaintiff McKee's text message for more than ten days.").) These copies are stored on board the vehicle's system even after the smartphone is disconnected. (ER-44, 56.)

Neither Plaintiff can access or delete these communications from the system's memory, and they did not consent to this arrangement. (ER-44.) But they do not allege that Jones's vehicle transmits any stored texts or call logs to Ford (or to anyone else), nor that Ford has previously accessed (or could access) them.

A third-party company called Berla has developed hardware and software that can extract communications from an infotainment system. (ER-44–46.) Berla sells its products only to law enforcement agencies, not to the general public. (ER-45.) Plaintiffs fear that "unauthorized law enforcement" could use Berla technology to review their private communications. (ER-46; *see* ER-50–54.) Plaintiffs suggest that their "private and confidential text messages and call logs [are] accessible at any time by law enforcement, by Berla, and by similar private actors without [Plaintiffs'] authorization." (ER-57.) But Plaintiffs do not allege that anyone has ever done so.

Based on these allegations, Plaintiffs claim that "Ford's intercepting and recording of Plaintiff Jones's text messages and call logs has injured Plaintiff Jones [and Plaintiff McKee] in his person." (ER-57–58.) Plaintiffs do not identify the nature of this purported injury or describe it. Plaintiffs merely assert that their private messages "reside on" Jones's vehicle, "can be accessed" without authorization by Berla, and "cannot be deleted by Plaintiff[s]." (ER-57–58.)

Plaintiffs sought to certify a class of Washington residents whose private communications were intercepted or recorded by infotainment systems in Ford vehicles. (ER-58–60.) Plaintiffs claimed violations of the Washington Privacy Act, plus sought declaratory and injunctive relief. (ER-60–61.) They did not seek actual damages for bodily injury, financial harm, or emotional distress. They sought only statutory damages: $1,000 for each class member. (ER-60–61.)

After Plaintiffs amended their complaint (ER-7, 41), Ford moved to dismiss it under Federal Rule of Civil Procedure 12(b)(6) (ER-8, 35). The district court granted the motion, but afforded Plaintiffs leave to amend. (ER-24–25.) Plaintiffs declined, electing to stand on their amended complaint and appeal. (ER-3–4, 10–12.)

## SUMMARY OF THE ARGUMENT

1. *Plaintiffs pleaded Article III standing to sue.* Plaintiffs asserted a statutory claim for violations of Washington's Privacy Act. Pleading a statutory claim satisfies Article III standing requirements if that claim bears a close, historical relationship to claims traditionally heard in common-law courts. Here, Plaintiffs analogize the statutory violations they allege to intrusion on seclusion, one of the historic common-law torts for invasion of privacy. That relationship satisfies Article III here.

Plaintiffs' responses miss the mark. It's true (as Plaintiffs say) that Ford bears the burden of proving Article III standing because it removed the case. But the burden does not matter here because Ford has plainly carried it based on Plaintiffs' own allegations. And nothing Ford has said before could judicially estop it from advocating for Article III standing because estoppel doctrines do not apply in evaluating the presence or absence of federal jurisdiction.

2. *Plaintiffs have not pleaded a Privacy Act claim.* Turning to the merits, the district court correctly ruled that Plaintiffs' operative complaint does not state a claim that Ford intercepted or recorded their private communications. There is no allegation that Ford surveilled

Plaintiffs or their communications (or could have done so). Ford simply manufactured Jones's vehicle containing an infotainment system that Jones chose to use. That does not create Privacy Act liability any more than selling computers and smartphones to purchasers who make and record calls and store texts on their devices. Any recording in this case was done by Plaintiffs, or by the system itself, which resides in a vehicle they own or use.

In addition, Plaintiffs have not satisfied the separate injury requirement located in the Privacy Act. They do not allege any injury to their "person[s]." Their apparent fallback argument—that they need only satisfy the requirements of an intrusion on seclusion claim—founders because their allegations do not meet the requirements for that claim either. Nor does the Article III injury help their cause in this context. Plaintiffs' Article III injury is different from the injury requirement in the Privacy Act, so establishing standing does not amount to pleading a claim on the merits.

## ARGUMENT

**I.    Plaintiffs have Article III standing to sue.**

**A.    Plaintiffs pleaded a statutory claim sufficiently close to traditional common-law claims to satisfy Article III.**

Article III standing requires (1) an injury in fact (2) traceable to a defendant's challenged conduct (3) likely to be redressed through a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Whether these elements are satisfied is measured in a manner suited to the stage of litigation. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (alteration in original) (citation omitted).

Two aspects of this Court's standing jurisprudence apply here.

First, a plaintiff satisfies Article III by pleading a claim for a violation of a statute that protects substantive privacy rights, like the right to be free from an invasion of privacy. *See Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270–71 (9th Cir. 2019) (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1041–43 (9th Cir. 2017)).

8

Second, when a statute codifies a common-law privacy right, a claimed statutory violation "gives rise to a concrete injury sufficient to confer standing." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020), *cert. denied sub nom. Facebook, Inc., v. Davis*, 141 S.Ct. 1684 (2021); *see also TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2204 (2021) (explaining that "intrusion upon seclusion" is an "intangible harm[ ]" that can amount to a "concrete injury in fact under Article III"); *Patel*, 932 F.3d at 1271–73 (similar).

Applying these principles here, Plaintiffs' operative complaint alleges Article III standing. They pleaded a violation of Washington's Privacy Act. (ER-60–61.) They allege that Ford intercepted and recorded their private communications without consent. (ER-60.) They analogize these allegations to common-law claims of intrusion upon seclusion. (AOB 34–36.) And they contend the Privacy Act may be understood to codify those common-law claims, to one degree or another. (AOB 29–34; *see* AOB 29 ("[T]he Legislature created a statutory cause of action for pre-existing common law torts of invasion of privacy."), 33 ("The 1967 statute codified an expanded remedy for the common law tort of invasion of privacy.").) At the pleading stage, those

allegations plausibly articulate an Article III injury because of the close connection between the Privacy Act and its common-law predecessors.

The Article III elements of traceability and redressability are satisfied as well. Parroting the complaint, Plaintiffs' brief states that "Ford's direct, purposeful actions cause the harms of which Plaintiffs complain." (AOB 6.) The complaint sought to "enjoin[ ] Ford from further interception and recordation of text messages and call logs by use of its infotainment systems, and [to] order[ ] Ford to cause its infotainment systems to delete all stored text messages and call logs"— the very conduct they claim injured them. (ER-61.) Accepting these allegations as true at the pleading stage, Plaintiffs have satisfied the causation and redressability components of Article III standing.

## B. Plaintiffs' counter-arguments are meritless.

Plaintiffs' opening brief offers three arguments against their Article III standing. None has merit.

First, Plaintiffs argue Ford bears the burden of demonstrating Article III jurisdiction because it removed the action. (AOB 3, 7–10, 14–16.) But nothing rises or falls on the allocation of the burden here. As shown above, Plaintiffs' own allegations satisfy Article III standing

requirements and Ford may rely on them. *E.g.*, *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 n.2 (9th Cir. 2022) (rejecting plaintiffs' argument that the defendant may not satisfy its burden to show Article III standing in a removed case on the basis of allegations in the complaint); *Gatchalian v. Atl. Recovery Sols., LLC*, No. 22-cv-04108, 2022 WL 3754523, at *4 (N.D. Cal. Aug. 30, 2022) (denying plaintiff's motion to remand for lack of Article III standing because her own complaint alleged harm "analogous to the harm of intrusion upon seclusion traditionally recognized [by] American courts"). Ford has shouldered the burden it bears.

Second, Plaintiffs contend Ford rebutted Article III jurisdiction by moving to dismiss in the district court. (AOB 5.) We understand this contention to mean that, by arguing for dismissal based (in part) on the absence of a *statutory* injury, Ford undermined support for an *Article III* injury. That contention is incorrect because an Article III injury and a statutory injury are not coextensive. (*See infra* Part II–C, pp. 25–27.)

In the district court, Ford focused on the absence of a statutory injury, as Plaintiffs acknowledge. (AOB 11 ("Ford couched its arguments below as addressing the WPA statutory requirement of an

11

injury to person, business, or reputation . . . .".) The Privacy Act identifies three types of injuries that, if any is shown, give rise to a statutory claim, § 9.73.060, yet Plaintiffs did not plausibly allege any of the three here. (*See infra* Part II–B, pp. 19–25.) That shortfall does not mean Plaintiffs failed to allege an Article III injury, however. Like many statutes, the Privacy Act imposes unique injury requirements different from an Article III injury, *see, e.g.*, *Tomek v. Apple Inc.*, 636 F.App'x 712, 713 (9th Cir. 2016) ("California's Unfair Competition Law ('UCL') statutory standing is 'more restrictive' than Article III standing . . . ." (citation omitted)), thus Plaintiffs' failure to plead a statutory injury does not mean the district court lacked Article III jurisdiction here.

Third, Plaintiffs assert Ford is judicially estopped from arguing that Plaintiffs have Article III standing. (AOB 17.) But principles of estoppel do not apply because parties are free to change their positions about the presence or absence of subject-matter jurisdiction. *See, e.g.*, *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) (noting a jurisdictional objection "can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction"); *Am. Fed'n of*

*Gov't Emps. Loc. 1 v. Stone*, 502 F.3d 1027, 1034–35, 1039 (9th Cir. 2007) (acknowledging the appellee's changed position on a jurisdictional issue—"the government's turnaround"—and accepting it). Plaintiffs suggest it would be unfair for Ford to "secur[e] dismissal on the merits in its preferred federal forum after denying the elements of Art. III jurisdiction." (AOB 17.) But Ford has never denied Article III jurisdiction. And Plaintiffs' view cannot be correct in any event, since this Court may rely on Rule 12(b)(6) to affirm on the merits a dismissal the district court entered for lack of jurisdiction under Rule 12(b)(1). *E.g.*, *Wood v. City of San Diego*, 678 F.3d 1075, 1086 (9th Cir. 2012) ("We affirm the district court's dismissal of Wood's disparate impact claim because, even assuming she has Article III standing, her claim fails as a matter of law.") (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010))).

\*

For all of the reasons above, this Court should hold that Plaintiffs' allegations plausibly pleaded a basis for Article III standing.

13

**II.    On the merits, the district court correctly ruled that Plaintiffs have not plausibly pleaded a Privacy Act claim.**

**A.    Plaintiffs did not plausibly plead that Ford intercepted or recorded their calls or texts.**

Under the Privacy Act, it is unlawful "to intercept, or record any . . . [p]rivate communication transmitted by telephone" absent consent. § 9.73.030(1)(a). An "interception" occurs in either of two situations: eavesdropping; or when a defendant reviews a communication before its intended recipient does so. *State v. Roden*, 321 P.3d 1183, 1188–89 (Wash. 2014); *State v. Bilgi*, 496 P.3d 1230, 1236 (Wash. Ct. App. 2021), *review denied*, 504 P.3d 827 (Wash. 2022). "Recordings" occur when devices store communications (such as emails or messages) so they may be read or printed later. *State v. Townsend*, 20 P.3d 1027, 1031–32 (Wash. Ct. App. 2001), *aff'd en banc*, 57 P.3d 255, 259–60, 262 (Wash. 2002).

Here, Plaintiffs claim that Ford intercepted and recorded text messages made from their smartphones and stored call logs. (ER-55–58, 60.) But that claim is not supported by the allegations of Plaintiffs' complaint—they have not plausibly pleaded that *Ford* intercepted or recorded anything.

14

The district court perceived this shortfall. Plaintiffs admitted that "the infotainment system, not Ford is intercepting and recording the communications." (ER-19.) "Plaintiffs specifically note such interception and recording is done '*by his* Ford *vehicle's infotainment system*' and that '*Jones's* Ford *vehicle infotainment system* wrongfully retains the recorded copy.'" (ER-19 (quoting ER-56)). The district court recognized that Plaintiffs do not allege that Ford controls (or even has access to) the infotainment system, or that the system is acting on Ford's behalf, let alone that Ford requires owners to use the system. (ER-19.) The court sensibly concluded that *Ford* neither intercepted nor recorded Plaintiffs' communications, and thus it may not be sued under the Act.

Plaintiffs offer three responses, each of which is meritless.

First, Plaintiffs seek to pin Ford's liability on "designing and installing the infotainment system." (AOB 24.) As Plaintiffs would have it, an infotainment system manufacturer is a "but for" cause of any later intercepting or recording that occurs, hence Ford violated the Privacy Act by installing the system. (AOB 20.) That boundless view of Washington law is wrong. The district court properly ruled that the Privacy Act "does not hold liable manufacturers, designers, or sellers of

devices that intercept communications. Instead, '[l]iability rests with the party recording or intercepting the conversation.'" (ER-19 (quoting *Kearney v. Kearney*, 974 P.2d 872, 876 (Wash. Ct. App. 1999)). If the law were otherwise, manufacturers of computers, cell phones, tape recorders, and other devices would bear or share liability in every Privacy Act case—an untenable approach.

Second, Plaintiffs assert the district court improperly faulted them for not pleading that Ford reviewed, utilized, actively controlled, or benefited from the intercepted or recorded communications because (they say) the Act imposes no such requirements. (AOB 24 (quoting ER-14), 28.) Plaintiffs miss the point. They were obliged to plead that *Ford* intercepted or recorded their communications. Because those communications are stored on Jones's vehicle—over which Ford has no control—it was necessary (both logically and legally) for Plaintiffs to plead that Ford somehow reviewed, accessed, or utilized the communications. Otherwise it would be implausible that *Ford* could have been involved in intercepting or recording Plaintiffs' communications. In other words, the district court was not holding

Plaintiffs to a higher standard than the Act requires; the court was illustrating the implausibility of their claims.

Plaintiffs go one step further in their brief, claiming that Ford "install[ed] illegal surveillance devices on every Ford vehicle, with knowledge of the capabilities of those surveillance devices." (AOB 28.) That is strong rhetoric, but it does not patch the hole in Plaintiffs' position: nothing in the complaint supports an inference that Ford "surveilled" Plaintiffs. Fairly read, the complaint alleges that *Plaintiffs* recorded *their own* communications on a vehicle *they* own or use. It does not follow that *Ford* intercepted or recorded any communications. Plaintiffs do not allege that Ford controlled the infotainment system after Plaintiff Jones purchased the vehicle, nor do they allege that Ford could access the system in a vehicle not in Ford's possession.

Third, Plaintiffs argue at length (AOB 23–28) that the district court wrongly relied on dictum from *Bilgi*, 496 P.3d 1230. The district court's reliance on *Bilgi* was unnecessary to its decision, but its reliance was appropriate all the same. In *Bilgi*, the Washington Court of Appeals rejected a Privacy Act argument. In that case, a sexual predator had argued that law enforcement officers (posing as a young

17

boy) violated the Act in communicating with the predator through software called Callyo (which "intercepted" his texts and emails). *Bilgi*, 496 P.3d at 1233. The Washington court held the predator had not preserved that argument for appeal, but addressed its merits anyway. The court found no violation of the Act: "Callyo is incapable of intercepting a communication in violation of the privacy act. . . . Callyo is a computer software, not an actor with agency." *Id.* at 1237.

*Bilgi* supports the district court's order here because it shows there is no violation of the Privacy Act when an inanimate object, or software, stores or records communications. The district court logically applied that principle to the storage of texts and call logs on board the infotainment system in Jones's vehicle. There was no good reason for the district court to ignore that helpful discussion, even if it could count as dictum. The Washington court's election to address a forfeited argument might even be seen as an indication of its significance. *See, e.g.*, *Ferreira v. Ashcroft*, 390 F.3d 1091, 1096 (9th Cir. 2004) (relying on dicta from intermediate state appellate court decisions); *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003) ("using intermediate appellate court decisions . . . as interpretive aids").

In sum, the district court correctly cited *Bilgi* for the proposition that the Act is not violated simply because "computer software record[s] communications." (ER-18.)

Plaintiffs' claim therefore fails because they have not pleaded that *Ford* intercepted or recorded their communications.

## B.     Plaintiffs did not plausibly plead a statutory injury.

The Privacy Act provides a claim to a person who can show one of three types of injuries. A plaintiff must "claim[ ] that a violation of this statute has injured his or her business, his or her person, or his or her reputation." § 9.73.060. Two of these three types of injuries are inapplicable in this case. Plaintiffs do not claim injuries to a business or to their reputations. Instead, their claim rises or falls on a claim of injury to "his or her person."

The Legislature did not define in the Privacy Act what an injury to "his or her person" means. "[I]n the absence of a statutory definition this court will give the term its plain and ordinary meaning ascertained from a standard dictionary." *State v. Watson*, 51 P.3d 66, 69 (Wash. 2002). Applying this principle, an injury to a "person" is simply a "personal injury," an invasion of a personal right that could manifest as

19

bodily harm, financial damage, or emotional distress. *See Ambach v. French*, 216 P.3d 405, 408 (Wash. 2009) (categorizing "pain and suffering," "medical expenses," "lost wages and earning capacity," and damages to personal property as "personal injuries"); *accord Personal Injury*, Black's Law Dictionary (11th ed. 2019) (sub-definition of "injury").

Plaintiffs' operative complaint does not mention *any* of these kinds of personal injuries. The complaint describes numerous facts unique to Plaintiffs Jones and McKee, including Jones's ownership of a Ford vehicle and their use of smartphones. (*See* ER-55–58.) But the complaint pleads nothing about bodily injury, emotional distress, financial harm, or the like. Plaintiffs do seek statutory damages of $1,000. (ER-60.) But statutory damages are available only to "[a] person so injured," § 9.73.060, meaning a plaintiff who has successfully alleged one of the three types of injuries listed. A request for statutory damages does not *create* the injury that is required to obtain relief.

Plaintiffs assert they were personally injured by "Ford's intercepting and recording" their "text messages and call logs," which "now reside on [Jones's] Ford vehicle," which cannot be deleted, and

20

which are "accessible at any time by law enforcement, by Berla, and by similar private actors without [Plaintiffs'] authorization." (ER-57–58.) Plaintiffs add that Ford has deprived them "of the right and ability to engage in private phone calls and text communications without Ford intercepting and recording" them. (ER-57–58.)

These allegations do not state a personal injury, however. First, as the district court recognized, no third party has accessed Plaintiffs' communications, so their claim of injury is premature and speculative. (ER-20; *see* ER-21 ("[Plaintiffs' allegations] are forward looking statements that rely on future acts that may or may not occur, not an injury that has occurred.").). Second, the fact that communications "reside on" Jones's vehicle is not injurious because Jones owns the vehicle. (*See* ER-22.) Third, Ford cannot have deprived Plaintiffs of the "ability to engage in private" communications. Plaintiffs' premise is that Ford is intercepting and recording their communications—a premise refuted above. (*See supra*, pp. 14–19.) More to the point, because all communications remain stored in Jones's vehicle, no privacy in those communications has been lost. Indeed, as the district court stated, this situation is a problem of Plaintiffs' own making if it is a problem at all:

recording occurs "only when Plaintiffs themselves connect their smart phones to the infotainment system"; "[i]f their phone is not connected to the infotainment system, they are not deprived of 'the right and ability to engage in private phone calls and text communications.'" (ER-21.) That is not an academic point about proximate or intervening causation, as Plaintiffs suggest. (AOB 21–23.) The point is that these allegations fail to show that *Ford* injured Plaintiffs.

Plaintiffs also argue that the mere recording of communications, without more, constitutes a statutory injury. (AOB 35–39.) In their view, "'[t]he information obtained need not be used,'" "'[t]he intrusion itself makes the defendant subject to liability.'" (AOB 35 (emphasis omitted) (citations omitted).) But that leaves no role to play for the statutory injury requirement in the Privacy Act. (*Supra*, pp. 19–20.) Or perhaps Plaintiffs mean to say that a violation of the Act—without more—is a personal injury. But either way, Plaintiffs' argument effectively reads the personal injury requirement out of the Privacy Act. That's impermissible because the plain language of the Act distinguishes a violation from an injury. The statutory provision that furnishes a cause of action requires a plaintiff to "claim[ ] that a

22

violation of this statute has injured . . . his or her person." § 9.73.060.
This language shows that a violation and a personal injury are
separate, and that both must be shown, contrary to Plaintiffs' position.
(*See* AOB 39 ("The violation of privacy *is* the injury.") (boldface
omitted).)

The remaining strand of Plaintiffs' theory is that the Privacy Act
"incorporate[s] the common law standard of violation equaling
actionable injury." (AOB 37 (emphasis omitted).) Under Plaintiffs'
theory, their claimed statutory injury is simply a violation of the
common-law tort of intrusion on seclusion, which "precisely tracks the
kind of conduct made actionable by the 1967 Legislature, and alleged in
the Complaint here." (AOB 35–36 (citing Restatement (Second) of Torts
§ 652B (1977)).)

This roundabout effort to avoid pleading a personal injury fails
because Plaintiffs cannot state an intrusion on seclusion claim under
§ 652B either. Under Washington Supreme Court precedent, a plaintiff
pursuing such a claim must show an "intentional intrusion, physically
or otherwise, upon the solitude or seclusion of plaintiff, or his private
affairs," and that "[t]he intrusion would be highly offensive to a

reasonable person." *Doe v. Gonzaga Univ.*, 24 P.3d 390, 399 (Wash. 2001).[1] Plaintiffs can't satisfy these elements here.

Plaintiffs have not alleged any invasion, or "intrusion," such as a trespass on their property, or an unwanted video of a private moment. In *Doe*, for example, the plaintiff proved "that Gonzaga personnel had inquired into the personal relationships, habits, and even anatomy of John Doe." *Id.* Plaintiffs here have alleged nothing remotely comparable against Ford.

In addition, Plaintiffs have not alleged that Ford's conduct was "highly offensive," nor can their complaint bear the weight of that serious charge. There is no allegation that anyone in the world has accessed Plaintiffs' private communications. Storing those communications in Jones's car, where no third party can access them without the intervention of Berla and (apparently) rogue law enforcement officials (*see* ER-45–46), is far from "highly offensive."

All this explains why another district court ruled that the invasion of privacy inherent in an unauthorized recording does not alone satisfy

---

[1]  The decision was later reversed, in part, by the United States Supreme Court on an unrelated federal ground. *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002).

the personal injury requirement of Washington Revised Code section 9.73.060. *Brinkley v. Monterey Fin. Servs., LLC*, 340 F.Supp.3d 1036, 1045 n.3 (S.D. Cal. 2018); *cf. Kadoranian by Peach v. Bellingham Police Dep't*, 829 P.2d 1061, 1063, 1068 (Wash. 1992) (denying relief under the Act in a proposed class action by persons whose communications "are inadvertently intercepted by police officers," but where "no actual injury has been claimed").

### C. The Article III injury is not a statutory injury.

"[O]ne must not 'confus[e] weakness on the merits with absence of Article III standing.'" *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800 (2015) (second alteration in original) (citation omitted). That is why a "holding that Plaintiffs–Appellants pled an injury-in-fact for purposes of Article III standing does not establish that they adequately pled damages for purposes of their state-law claims." *Krottner v. Starbucks Corp.*, 406 F.App'x 129, 131 (9th Cir. 2010); *accord Doe v. Chao*, 540 U.S. 614, 617–18, 624–25 (2004) (holding that a plaintiff had Article III standing, but no Federal Privacy Act claim); *Tailford*, 26 F.4th at 1100–01, 1104 (affirming order denying remand because the complaint showed an Article III injury,

and also affirming order dismissing all claims with prejudice); *Backhaut v. Apple Inc.*, No. 14-CV-02285, 2015 WL 4776427, at *7 (N.D. Cal. Aug. 13, 2015) (Koh, J.) (explaining that "[s]tanding under the [California] UCL is narrower than traditional federal standing requirements"), *aff'd*, 723 F.App'x 405 (9th Cir. 2018).

"[T]he Article III requirement of remediable injury in fact . . . has nothing to do with the text of the statute relied upon." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998). Thus, pleading a statutory injury often diverges from pleading an Article III injury. The relationship between the two depends on the statutory scheme. Where (as here) a statute imposes a specific "injury" requirement, a plaintiff must likely articulate separate Article III and statutory injuries.

For example, in *Canyon County v. Syngenta Seeds, Inc.*, an Idaho county sued under RICO's civil enforcement provision alleging that defendants' unlawful hiring of undocumented workers had forced the county to spend additional sums on healthcare and criminal justice services. 519 F.3d 969, 971 (9th Cir. 2008). This Court held that the county had pleaded an Article III injury, but had not pleaded a civil RICO injury. *Id*. at 974 n.7. RICO imposed a separate injury

requirement—that a plaintiff "has been injured in his business or property by the conduct constituting the violation," *id*. at 975—that the county had failed adequately to plead, *id*. at 975–80, and that was not embraced by the county's broader showing of Article III standing. *Accord Shulman v. Kaplan*, __ F.4th __, No. 20–56265, 2023 WL 225625, at *2 (9th Cir. Jan. 18, 2023) ("We hold that while Appellants have Article III standing, they lack statutory standing under RICO.").

Likewise, under Washington's Privacy Act, a plaintiff must plead and prove a specific injury—to a business, reputation, or "his or her person"—that is not identical to an Article III injury. Plaintiffs here have pleaded a statutory claim bearing "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Patel*, 932 F.3d at 1270 (quoting *Spokeo*, 578 U.S. at 341). That relationship satisfies Article III and opens the door to the federal courthouse. But that relationship alone does not plead a claim on the merits. Plaintiffs were still obliged to plead one of the Privacy Act's three types of statutory injuries. As explained above in Part II–B, they have not done so.

27

## CONCLUSION

This Court should affirm the judgment for Ford.

February 6, 2023

**HORVITZ & LEVY** LLP
  PEDER K. BATALDEN
  EMILY V. CUATTO
**DLA PIPER US** LLP
  ANTHONY TODARO
  JEFFREY B. DeGROOT

By: _____ s/Peder K. Batalden _____

Attorneys for Defendant-Appellee
**FORD MOTOR COMPANY**

28

## STATEMENT OF RELATED CASES

*Ritch v. Honda*, No. 22–35448

*Dornay v. Volkswagen*, No. 22–35451

*Goussev v. Toyota*, No. 22–35454

*McKee v. GM*, No. 22–35456

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-35447

I am the attorney or self-represented party.

**This brief contains** | 5,216 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(X) complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Peder K. Batalden | **Date** | February 6, 2023

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**        *Rev. 12/01/22*